## LE BLANC v. SOUTHERN PRODUCTION CO.

### No. 14107.

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1953.

J. Minos Simon, Lafayette, La., for appellant.

Wm. H. Mouton and Charles F. Bailey, Bailey & Mouton, Lafayette, La., for defendant-appellee.

Before HUTCHESON, Chief Judge, and STRUM and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a summary judgment entered by the district court for the following reasons:

"We find the complainant's allegations, contentions, and prayer in this action are identical with those disposed of in a final judgment in the Supreme Court of Louisiana, in an action by this plaintiff against a corporation merged with this defendant. Le Blanc v. Danciger Oil & Refining Co., 1950, 218 La. 463, 49 So.2d 855. Plaintiff's cause of action, therefore, has already been fully and finally adjudicated, and had been so adjudicated when this action was filed."

The complaint filed in the federal court on the ground of diversity of citizenship sought, as did the complaint in the state court, the cancellation of an oil, gas and mineral lease executed by the plaintiff on December 23, 1943 covering a tract of land containing fifty-four acres in the Parish of St. Landry, Louisiana. The primary term of the lease was for a period of three years, and the lease was to expire on December 23, 1946 unless a well was drilled on the land prior thereto. No well was drilled on the fifty-four acre tract prior to December 23, 1946, but a well was drilled on an adjoining tract of land owned by one Alice Prejean prior to May 18, 1945, and on that date the Department of Conservation of the State of Louisiana issued its order 93–1 unitizing 14.34 acres of the Milton LeBlanc property with 25.66 acres of the Alice Prejean tract, upon which the producing well was located. The order provided in part as follows:

"and the separately owned property interests embraced therein are hereby pooled, unitized and consolidated into one unit for all purposes of lease and sublease contracts covering said unit, which shall be treated, developed and operated as one lease, one unit, one property and one tract for the production of oil and gas from the Boagni 'B'–1 Sand of the North Cankton Field; and drilling operations, drilling and production on any of the tracts included within said unit shall constitute drilling operations, drilling and production under the terms of each and every one of said leases or subleases. All royalties accruing under lease and sublease contracts on all production of oil and gas from the Boagni 'B'–1 Sand shall be treated as an entire-

ty and shall be divided among and paid to the separate owners thereof in the proportion that the acreage (mineral rights subject to lease or sublease of each royalty or overriding royalty owner in said Unit) bears to the total acreage in said unit. The payment of said royalties and overriding royalties that may be due on oil and gas, including liquid hydrocarbons contained therein produced from the Boagni 'B'-1 Sand underlying said unit when made in such proportions shall be and constitute full compliance with the obligations to make any payments under all contracts affecting the property included within said unit."

Subsequent· to the unitization order, and after December 23, 1946, appellee's assignor in title drilled three wells on that portion of appellant's tract lying outside of the unit.

Appellant claims that the appellee had no further rights in the fifty-four acre tract after December 23, 1946, that he is entitled to a cancellation of the lease and an accounting for all oil and minerals extracted from his property, and restoration of possession of his property. The unitization order he attacks as unconstitutional in impairing the obligation of his contract and in permitting his property to be taken without due process of law.

The Supreme Court of Louisiana recited the contentions of the appellant, but did not expressly pass upon the federal constitutional questions for reasons thus stated in its opinion:

"The plaintiff's case is based upon the erroneous assumption and conclusion that the order of the Commissioner of Conservation was intended to affect the property lying outside the unit and to vary the contract between the parties with respect thereto. The lawmakers in adopting Act No. 157 of 1940 [LSA–R.S. 30:2 et seq.] as a conservation measure never intended that

the orders of the Commissioner of Conservation creating pooling units pursuant thereto should ever have any effect beyond the limits of such units, and the Commissioner, in issuing Order No. 93–1 on May 18, 1945, creating the 40-acre pooling unit involved in this case not only never intended that it should, but he has not, in fact, endeavored to exercise any jurisdiction beyond the limits of this unitized area. The authorities relied on by the plaintiff are, therefore, inapposite." Le Blanc v. Danciger Oil & Refining Co., 49 So.2d 855, 857.

The Supreme Court of Louisiana nevertheless affirmed the judgment of the Louisiana District Court dismissing, on exceptions of no cause and no right of action, plaintiff's suit. There was no attempt to appeal to the Supreme Court of the United States under 28 U.S.C.A. § 1257.

Appellant does not contend that the decision of the Louisiana Supreme Court was not such a final judgment as would be *res judicata* with respect to any further action in the Louisiana State Courts. His contention as expressed in brief is as follows:

"Basically, it is our position that the plaintiff at bar did not have a right of appeal to the United States Supreme Court from the decision of the Supreme Court of Louisiana in the case relied upon by the defendant for its plea of res judicata, and, therefore, the decision cannot suffice as a proper basis for the plea, which forms the basis for the motion for summary judgment filed by the defendant." [1]

If the Louisiana Supreme Court denied appellant's asserted federal constitutional rights, though its opinion was not couched in those terms, appellant's premise that he had no right to appeal to the United States Supreme Court may well be doubted. See Angel v. Bullington, 330 U.S. 183, 190, 67

---

1. In support of that contention appellant cites Garland Co. v. Filmer, D.C., 1 F. Supp. 8, and U. S. ex rel. Herge v. Com-
monwealth of Pennsylvania, D.C., 89 F. Supp. 636. As to a related proposition, see Annotation 157 A.L.R. 1038.

S.Ct. 657, 91 L.Ed. 832, where the Court said.

"If an asserted federal claim is denied enforcement on a professed local ground, but a so-called local ground which is subject to review here because it is in fact the adjudication of a federal question, then the 'merits' of that claim were adjudicated in the only sense that adjudication of the 'merits' is relevant to the principles of *res judicata*. A State court cannot sterilize federal claims by putting on the adjudication a local label." 330 U.S. 190, 191, 67 S.Ct. 657, 661.

In any event the decision of the Louisiana Supreme Court is conclusive that appellant is entitled to no relief whether the ground of denial be a ruling on the federal constitutional questions or on the state law. Angel v. Bullington, supra; Larter & Sons, Inc. v. Dinkler Hotels Company, Inc., 5 Cir., 199 F.2d 854. The judgment is therefore

Affirmed.