## HOWARD et al.  v.  LADNER et al.
### Civ. No. 1974.

United States District Court,
S. D. Mississippi, Jackson Division.
Oct. 16, 1953.

J. Will Young, Joe H. Daniel and Curtis E. Coker (of Young & Daniel), Jackson, Miss., Leon A. Ransom, Perry W. Howard and Julian R. Dugas, Washington, D. C., for plaintiffs.

Lester E. Wills, Meridian, Miss., James A. White, Durant, Miss., Nelson E. Taylor, Greenwood, Miss., John Stone, Asst. Atty. Gen., for defendants.

Before RIVES, Circuit Judge, and MIZE and THOMAS, District Judges.

RIVES, Circuit Judge.

The plaintiffs seek an injunction restraining the Secretary of State for the

State of Mississippi from the enforcement and execution of a State statute, or a part thereof, upon the ground that, as construed and applied by the Supreme Court of Mississippi in Hoskins v. Howard, 214 Miss. 481, 59 So.2d 263, said statute, or part thereof, violates the due process clause of the Fourteenth Amendment to the Constitution of the United States.[1] The statute in question is now known as Chapter 458, Mississippi Laws of 1950, or as Sections 3107–01 to 3107–09 inclusive of the Mississippi Code of 1942, as amended; and in pertinent part is copied in the footnote.[2]

The suit is brought by the plaintiffs as officers and members of the "Republican Party of Mississippi" on behalf of themselves and of all the members of said Party against the defendant, Ladner, as Secretary of State for the State of Mississippi and against the other defendants individually and as officers and representatives of the "Mississippi Republican Party". The complaint prays also for a judgment declaring said statute unconstitutional, at least in part, and for an injunction against the defendants other than the Secretary of State restraining them and others similarly situated from claiming to be the sole "Republican" political party in said State.

Jurisdiction of a federal district court is invoked on the ground that the matter in controversy exceeds the value of $3,000 and arises under the Constitution of the United States. 28 U.S.C.A. § 1331.[3] Another ground suggested for federal jurisdiction is to redress the alleged deprivation under color of a State law or statute of a right, privilege or immunity secured by the Constitution of the United States. 28 U.S.C.A. § 1343(3).[4] A three-judge district court to hear and determine the action is requested under 28 U.S.C.A. § 2281.[5]

1. " * * *; nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

2. "Section 1. The chairman or secretary of the state executive committee of each political party chosen as provided in Section 3107, code of 1942, as amended by chapter 308, Mississippi Laws of 1948, shall register the name of the political party it represents with the secretary of state within thirty (30) days after the effective date of this Act. Thereafter, no political party shall use or register any name or part thereof which has already been registered with the secretary of state by any other political party. No political party shall use any name in any compaign literature listing or describing its candidates which does not correspond with the name of said political party registered with the secretary of state.

"Any political party hereafter organized under the laws of this state shall register with the secretary of state in the manner as herein provided and within thirty (30) days after such organization."

3. "Federal question; amount in controversy

"The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States."

4. "§ 1343. Civil rights

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

*        *        *        *        *

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

5. "§ 2281. Injunction against enforcement of State statute; three-judge court required

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

The complaint alleges that: "The amount in controversy, involving a property right to a political name and title, and the right to existence as such under the said name, exceeds in value the sum of Three Thousand ($3,000.00) Dollars, exclusive of interest and costs."

These allegations are admitted by the defendant Secretary of State, but are denied by the other defendants. While the rights involved are political and transcend mere property rights, they include the latter also. It has long been settled that for jurisdictional purposes the value of social and political rights is capable of pecuniary calculation. Giles v. Harris, 189 U.S. 475, 485, 23 S.Ct. 639, 48 L.Ed. 909. Even clubs and associations may acquire property rights in the use of a name. 4 Am.Jur., Associations and Clubs, Sec. 37. In a true class action the test of jurisdiction in an injunction suit is the amount or value of the aggregate interests of the members of the class on whose behalf the suit is brought. Gibbs v. Buck, 307 U.S. 66, 72, 59 S.Ct. 725, 83 L.Ed. 1111; Annotation 30 A.L.R.2d 663. Plaintiff's evidence, which was not contradicted, established that the cost of reorganizing their party or of supplying it with another name would greatly exceed the sum of $3,000.

Even then, the question would remain, "What's in a name?" With political party labels, certainly in the South, it does not hold true that a party by any other name would smell as sweet to thousands of voters. Attachment to political labels has become proverbial. We find that the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs and that federal jurisdiction exists under 28 U.S.C.A. § 1331.

The right to vote in elections of members of Congress is a privilege secured by the Constitution of the United States. Wiley v. Sinkler, 179 U.S. 58, 21 S.Ct. 17, 45 L.Ed. 84; United States v. Classic, 313 U.S. 299, 314, 61 S.Ct. 1031, 85 L.Ed. 1368. That privilege extends to the right to vote in party primary elections, United States v. Classic, supra; Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987; Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, and hence to be free from unreasonable restrictions in acting under the party name. State ex rel. McGrael v. Phelps, 144 Wis. 1, 128 N.W. 1041, 35 L.R.A.,N.S., 353. The right to the equal protection of the laws is also secured by the Constitution of the United States. We think that federal jurisdiction exists under 28 U.S.C.A. § 1343(3) irrespective of the amount involved. Clearly, a Three-judge District Court is required under the provisions of 28 U.S.C.A. § 2281 et seq.

All parties defendant join in moving for summary judgment on the ground that the decision of the Supreme Court of Mississippi in Hoskins v. Howard, supra, is entitled to full faith and credit in this Court and is res judicata of all questions and matters raised by the plaintiffs in this case. They insist further that from that judgment the plaintiffs here (who were the appellees in the Mississippi Supreme Court) had a right of direct appeal to the Supreme Court of the United States under the provisions of 28 U.S.C.A. § 1257(2),[6] but that instead they petitioned the Supreme Court of the United States for a writ of certiorari in said cause, which petition was denied on the 5th day of January, 1953, "for the reason that application therefor was not made within the time provided by law. 28 U.S.C. § 2101(c)". 344 U.S.

---

6. "§ 1257. *State courts; appeal; certiorari*

"Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

\* \* \* \* \*

"(2) By appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity."

915, 73 S.Ct. 334. The defendants further insist that the plaintiffs are now estopped because in their untimely petition for certiorari they adopted a position inconsistent with their claims in the present litigation.

A restatement of some of the facts is essential to a clear understanding of this case:

The "Republican Party of Mississippi", of which the plaintiffs are the officers and state executives, was organized in 1872, and has been recognized and accepted by the National Convention of the Republican Party as its representative in the State of Mississippi. A schism developed and in 1928 the defendants (other than the Secretary of State) or their predecessors organized the "Independent Republican Party of Mississippi", which has since that time consistently polled a larger vote than the older Party. The name of the "Independent Republican Party of Mississippi" was changed from and after the Presidential election of November 2, 1948 to "Mississippi Republican Party".

The Act in question became effective immediately upon its approval by the Governor of Mississippi, which occurred on the 7th day of April, 1950. On that same date the defendants other than the Secretary of State filed with the defendant Ladner as Secretary of State an application for the registration of the "Mississippi Republican Party" under the provisions of said Act. The application, as amended on April 10, 1950, was approved and the registration granted on April 11, 1950. Thereafter, on April 29, 1950, twenty-two days after the approval of the Act, plaintiffs applied for registration of the "Republican Party of Mississippi". The Secretary of State sought the advice of the Attorney General of Mississippi, and, acting upon the Attorney General's opinion,[7] declined to register said political party under the name of the "Republican Party of Mississippi".

Plaintiffs then brought suit in the Circuit Court of Hinds County, Mississippi, against defendants, who were the same as the defendants in the present action or their predecessors in office. The complaint filed in the State Court was in two counts, comprising some sixty-one record pages. The first count claimed that, by reason of the attempted change of name of the defendants' party in November, 1948, from the Independent Republican Party to Mississippi Republican Party, it was not entitled to registration under the latter name and sought a writ of mandamus to compel the Secretary of State to cancel the registration of defendants and to register plaintiffs as the Republican Party of Mississippi. The second count of plaintiffs' complaint in the State Court averred that, if the plaintiffs were mistaken in the relief demanded in the first count, then the Act as interpreted, applied and enforced was violative of the rights of the plaintiffs under the Constitution of the State of Mississippi and under the Constitution of the United States, referring among other provisions to the due process clause of the Fourteenth Amendment. The only prayer for relief in the second count was contained in its concluding paragraph as follows:

> "Wherefore, the plaintiffs say that if they are not entitled to the relief prayed for in the first count of this declaration, said act of the legislature is void and of no effect and the plaintiffs pray that the court will enter a judgment so declaring said act to be unconstitutional."[8]

---

7. In part, "I think the petition filed herewith shows that the party conventions of the applicant were held in accordance with these laws and, but for the fact that a prior registration of another party making similar showings had already been registered, petitioners would be entitled to registration; but under House Bill 912, two political parties cannot be registered under the same name, each claiming to be a political party whose name was registered or sought to be registered."

8. Mississippi does not provide for actions seeking declaratory judgments.

Upon the trial, the State Circuit Judge expressed his opinion that the proper form of remedy was a petition in the nature of certiorari to the Secretary of State, and permitted the proceeding to be amended to incorporate such a petition. After a full hearing, the State Circuit Court ordered that the registration of the party represented by the defendants be cancelled and that the party represented by the plaintiffs be registered as the Republican Party of Mississippi. The Circuit Judge expressed fully the reasons for his ruling. A contrary construction or application of the statute would, he thought, render it unconstitutional.[9]

From that judgment the defendants appealed to the Supreme Court of Mississippi. That Court held that the lower court had erred in its holding that the change in name from Independent Republican Party of Mississippi to Mississippi Republican Party justified a rejection of defendants' application for registration. The Supreme Court of Mississippi further held that the statute authorized the Secretary of State to register the name of the first political party applying for registration, and that thereafter no other political party could register under the same name or any part thereof, and that the plaintiffs were therefore denied the right to use in the name of their party the word "Republican". The Supreme Court of Mississippi further expressed its opinion that the statute, as so construed, did not violate

9. "It is the duty of every court to construe an act of the legislature as constitutional if it can reasonably be done.

"As it appears to this Court any act which provides that 'he who is first in time' might preempt a name of a political party by registering the same—if the act provided that and no more—would be unconstitutional.

"The Court believes that the legislature could not subject valuable rights to the result of a mere foot race, or who might reach the capitol first and register with the Secretary of State. Such would be dealing capriciously or whimsically with rights that this Court believes to be valuable and vested; and if the constitutionality of this act is to be preserved we must inquire further into this feature to see if the mere prevalence in time is the sole controlling factor.

"It appears to this Court that prevalence in time is by no means the controlling factor of this act.

"The act is carefully and judicially drawn so as to protect the rights of all parties.

"There are two elements to the act, one is that the Secretary of the several parties shall register the name of the party with the Secretary of State.

"The second feature, and it is essentially a part of the act and prescribes the character of the party sought to be registered, so that only those parties may be registered which complied with certain acts which we will designate as precedent acts.

"The precedent acts are laid out in Chapter 308 of the laws of 1948. The precedent acts consist of an organization process whereby the political parties begin at the precincts and work up through the county sites, culminating their efforts in a convention in the Capitol, at which a chairman is elected, a secretary is elected, a national committeeman and a national committeewoman elected, and presidential electors named.

\* \* \* \* \*

"Therefore I would rule that the act is constitutional upon the theory that the legislature knew at the time that there were no parties subject to be registered bearing the same name that had the qualifications hereinabove mentioned; to report a name available to the secretary, and a history of the proceedings had and done under chapter 308 of the laws of 1948, and within the period of time outlined therein.

"Name is of the essence of the act, and since the very name itself is the significant and controlling feature of the act, the name enjoyed and used during the time that the said precedent acts were being performed, and which constitute essentially a part of the characteristics of the party sought to be registered, would have to prevail.

"Therefore the Court would rule that the defendant party although at the time the registration was had, was going under the name of Mississippi Republican Party, still it was not subject to be registered under the act, because during the period of time when the necessary precedent acts prescribed by chapter 308 of the laws of 1948 were being performed, the party enjoyed and used another name."

the Mississippi Constitution nor the provisions of the Constitution of the United States. One of the Justices vigorously dissented.

By its judgment, the Supreme Court of Mississippi did "order and adjudge that the judgment of said lower court is hereby reversed and the registration of Mississippi Republican Party is hereby reinstated the registration of Republican Party of Mississippi is hereby cancelled."

■ We find no difficulty in deciding that the plaintiffs are not estopped in any way by having assumed an inconsistent position in the petition seeking the issuance of a writ of certiorari by the Supreme Court of the United States. The reasons are that the petition was not successfully maintained and that the defendants were not misled or prejudiced in any way. See Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578; 19 Am.Jur., Estoppel, Sec. 72; Id. p. 712, note 11, Sec. 73; cf. Livesay Industries, Inc., v. Livesay Window Company, Inc., 5 Cir., 202 F.2d 378.

■ The defense of res judicata, however, presents the most difficult problems in this case. The validity of that defense must be determined by federal law. That is true because this Court sits not as did the District Court in the diversity case of Angel v. Bullington, 330 U.S. 183, 91 L.Ed. 832, 67 S.Ct. 657, simply as another court of the state, but as a federal court having the primary duty to enforce the Constitution of the United States; and, hence, to decide whether the defense of res judicata under the facts and circumstances of this case is a bar to the plaintiffs' action. In this national area "there has always been and must continue to be federal-judicially declared law, which may properly be described as federal common law." Moore's Commentary on the United States Judicial Code, p. 340, Sec. 0.03 (45).

■ For the application of the defense of res judicata, a number of factors must be considered, a few of which we will briefly discuss:

(a) The Parties. The parties to the action decided by the Supreme Court of Mississippi and to this suit would appear to be practically identical. On the record the parties' plaintiff are identical, and the official positions of the defendants are the same. Two of the defendants' party officials were different individuals, but that seems to us wholly immaterial. However, when we look beyond the paper record, we must observe that both actions were filed by the plaintiffs on behalf of themselves and of all the members of the Republican Party of Mississippi. Insofar as the actions seek the protection of no more than a property right jointly owned, they may be termed true class actions to which the doctrine of res judicata would be applicable. Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673; 3 Moore's Federal Practice (2d ed.), Sec. 23.11, p. 3460; A.L.I., Restatement, Judgments, Sec. 86. That is not true, however, when we consider that the underlying purpose of protecting the so-called property rights in the Party's name is to protect and enforce the civil rights of the members of the Party. The right of suffrage is separately possessed by each individual voter. So considered, the actions should properly be classed as spurious class actions in which the defense of res judicata would not be valid as against the members of the Party represented by plaintiffs. Wabash Railroad Co. v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379; 3 Moore's Federal Practice (2d ed.), Sec. 23.11, pp. 3465–8. The application of this principle, however, is especially difficult in the present case, because the members of the Party were and are represented in both actions by the same Party officials. Do we then have the situation where the rights of the members should be denied enforcement in the present action, because their representatives are barred by res judicata? Without deciding that question,

we suggest that, if necessary, a court of equity can mold its decree to meet the peculiar situation; and further, as to the named parties' plaintiff, that in the event it should finally be determined that the Supreme Court of Mississippi was in error in its view that the statute as construed by it did not violate the Constitution of the United States, it would be unjust to apply one rule of law as to the named parties' plaintiff and a different rule of law as to the members of the Party represented by them. Cf. A.L.I., Restatement, Judgments, 1948 Supplement, Sec. 70, pp. 340–343.

(b) Causes of Action. Are the causes of action in the two suits identical? It is forcibly urged that the judgment of the Mississippi Supreme Court not only granted registration to the Mississippi Republican Party, but also denied registration to the Republican Party of Mississippi, and hence included the cause of action here asserted. In close cases few questions of law present more difficulty than the concept of a cause of action as related to res judicata. It has been said that: "A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show." Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069; see American Fire & Casualty Co. v. Finn, 341 U.S. 6, 12, 13, 71 S.Ct. 534, 95 L.Ed. 702. Professor Moore favors an "empirical approach" toward a cause of action as related to res judicata. 2 Moore's Federal Practice (2d ed.), Sec. 2.06, p. 378. In a recent article on "Developments In the Law of Res Judicata" in 65 Harvard Law Review, pp. 818, 824, the following are mentioned among the most common rules for determining whether the second action is foreclosed if:

"(a) the same principles of substantive and procedural law are applicable to both actions, (b) the same right is alleged to be infringed by the same wrong in both actions, (c) the judgment sought in the second action would infringe rights established in the first, (d) the same evidence would support both actions, or (e) the operative facts are the same in both actions."

It is stated that, "Precedent is haphazard in this field; on a given set of facts there seems to be at least one rule to buttress any result, and the same tests often can sustain opposite positions." The author notes, however, that, "An examination of what seem to be the real policy considerations indicates * * * that fairly uniform rules may be followed with respect to specific fact situations." The policy considerations discussed in the article are captioned, "Trial Convenience", "Stability", "Countervailing Policies", "Effect of Waiver, Fraud, and Mistake on Merger". Cf. A.L.I., Restatement, Judgments, pp. 239, et seq.

What the Mississippi Circuit Judge said as to the constitutionality of the statute was in connection with its construction. The primary objective of the action in the state court was to secure a proper construction of the statute, the plaintiffs contending that the statute must be construed to afford them relief in order to sustain its constitutionality. The judgment of the Supreme Court of Mississippi does not mention the constitutionality of the statute. Its opinion in that respect may be referred to the statute's construction by way of showing that the Circuit Judge was in error in holding that he must construe the statute as he did in order to sustain its constitutionality. The claim adjudged was the right to relief under the Mississippi statute, the exclusive right to the use of the name "Republican". The claim now sought to be enforced is the right to relief against or despite the Mississippi statute, the right to the use by the plaintiffs, not exclusive of the defendants, of the name "Republican". The plaintiffs argue that they are not foreclosed from struggling for co-existence, because they have been beaten in a war of extermination.

From the viewpoint of trial convenience, we may observe that an au-

thoritative construction of the statute by the State Supreme Court was necessary before this Court could proceed with a suit to enjoin its enforcement and execution as violative of the Constitution of the United States. 28 U.S.C.A. § 2284(5). Shipman v. DuPre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877. The federal courts will not assume, in advance of decision by the state court of last resort, that that court will place such a construction upon a statute as will render it obnoxious to the federal Constitution. Utah Power & Light Co. v. Pfost, 286 U.S. 165, 186, 52 S.Ct. 548, 76 L.Ed. 1038; Arizona Copper Co. v. Hammer, 250 U.S. 400, 430, 39 S.Ct. 553, 63 L.Ed. 1058; Pelton v. Commercial National Bank, 101 U.S. 143, 25 L. Ed. 901. It is natural, therefore, and even necessary for plaintiffs to proceed first in the state courts to secure a construction of the statute.

### (c) Collateral Estoppel—Questions of Law.

"Where the second cause of action between the parties is upon a different claim the prior judgment is res judicata not as to issues which might have been tendered but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.'" Mercoid Corporation v. Mid-Continent Co., 320 U.S. 661, 671, 64 S.Ct. 268, 274, 88 L.Ed. 376; see also United States v. International Building Co., 345 U.S. 502, 504, 505, 53 S.Ct. 807; Cromwell v. County of Sac., 94 U.S. 351, 353, 24 L.Ed. 681; Russell v. Place, 94 U.S. 606, 24 L.Ed. 214; Peckham v. Family Loan Co., 5 Cir., 196 F.2d 838, 840, 841; Travelers Ins. Co. v. Commissioner of Internal Revenue, 2d Cir., 161 F.2d 93, 95; A.L.I., Restatement, Judgments, Sec. 68.

■ If the second cause of action is upon a different claim, the prior judgment is not res judicata as to questions of law, except where both causes of action arose out of the same subject matter or transaction and that exception does not apply where injustice would re-sult. A.L.I., Restatement, Judgments, Sec. 70, pp. 318, 322, 324; 1948 Supplement, Sec. 70, pp. 341, 342; 50 C.J.S., Judgments, § 712, page 176; Sonken-Galamba Corp. v. Atchison, T. & S. F. R. Co., D.C., 33 F.Supp. 814, 34 F.Supp. 15, affirmed and approved 8 Cir., 124 F.2d 952, 954, 955, certiorari denied 315 U.S. 822, 62 S.Ct. 917, 86 L.Ed. 1218.

(d) Federal Constitutional Questions. It has been said that: "A determination of a federal constitutional question by a state tribunal is not conclusive if there is no right of appeal to the federal courts." Garland Co. v. Filmer, D.C., 1 F.Supp. 8, 12; cf. Le Blanc v. Southern Production Co., 5 Cir., 202 F.2d 245. In Angel v. Bullington, 330 U.S. 183, 205, footnote 11, 67 S.Ct. 657, 668, 91 L.Ed. 832, Mr. Justice Rutledge dissenting properly observes that: "The Court clearly implies that Bullington would not be foreclosed on res judicata by the North Carolina decision if his route to this Court for review had been by certiorari rather than by appeal." See particularly the part of the Court's opinion 330 U.S. beginning on page 189, 67 S.Ct. beginning on page 660. In this case, as we have noted, the defendants contend with much reason that the plaintiffs, who were the appellees in the Mississippi Supreme Court, had a right of appeal from the judgment of that Court to the Supreme Court of the United States. Whether the proper mode of review is by certiorari or appeal is often, however, a matter of considerable doubt. The plaintiffs' counsel undertook to proceed by petition for certiorari.

■ The United States Courts are the peculiar guardians of the Constitution of the United States. The decisions of even the highest state courts are not binding upon federal courts concerning questions arising under the Constitution of the United States. If we were concerned simply with an application of the doctrine of stare decisis, it would be clear that we are not bound by the opinion of the Supreme Court of Mississippi. When all that is involved is the decision of a pure question of law, it seems doubt-

ful whether a different result should follow because we call the doctrine res judicata rather than stare decisis.

■ (e) Equitable Relief from Judgments for Accident or Mistake. Appearing in the record is an affidavit of plaintiffs' counsel, who filed the untimely petition for certiorari to the Supreme Court of the United States from the judgment of the Supreme Court of Mississippi, explaining his conduct as caused by unavoidable illness and mistake. Sickness has been recognized as a ground of equitable relief from judgments; 31 Am.Jur., Judgments, Sec. 637; Note 30 L.R.A. 794; and accident is, of course, one of the well recognized grounds on which equitable relief may be granted against judgments. 31 Am. Jur., Judgments, Sec. 636; cf. A.L.I., Restatement, Judgments, Chapter 5, pp. 531 et seq. We do not think it necessary, however, in this case to pass upon the sufficiency of this claimed equitable ground for relief from the failure to appeal from the judgment of the Supreme Court of Mississippi to the Supreme Court of the United States.

■ (f) Countervailing Policies. We have discussed a number of the factors entering into the application of the doctrine of res judicata which give cause to its application in the present case. We prefer, however, to base our decision upon considerations of public policy to which the doctrine of res judicata should yield. As was stated by Judge Hutcheson in Holmes v. Donald, 5 Cir., 84 F.2d 188, 190, "It [res judicata] is not a Procrustean formula to be rigorously and rigidly applied, to give substance to what was merely an appearance of finality, and thus cut off actions and defenses not really, but only apparently, determined." Mr. Justice Rutledge in his dissenting opinion in Angel v. Bullington, supra, 330 U.S. at page 203, 67 S.Ct. at page 668, made, it seems to us, a sound observation, not in conflict with the opinion of the Court in that case, to the effect that it is not every case "in which the policy of stopping litigation outweighs that of showing the truth." In Mercoid Corporation v. Mid-Continent Co., supra, 320 U.S. at page 670, 64 S.Ct. at page 273, Mr. Justice Douglas, speaking for the Court, said:

" 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.' Virginian Ry. Co. v. System Federation, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789. 'Where an important public interest would be prejudiced,' the reasons for denying injunctive relief 'may be compelling.' City of Harrisonville v. W. S. Dickey Clay Co., 289 U.S. 334, 338, 53 S.Ct. 602, 603, 77 L.Ed. 1208. And see United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 801, 83 L.Ed. 1211. * * * That principle is controlling here. The parties cannot foreclose the courts from the exercise of that discretion by the failure to interpose the same defense in an earlier litigation. Cf. Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172 [87 L.Ed. 165]."

We feel a compelling reluctance and unwillingness to hold that the members of the Republican Party of Mississippi, inadequately represented in securing a review by the Supreme Court of the United States of the judgment of the Supreme Court of Mississippi, are now foreclosed from seeking protection in the United States Courts of their rights under the Constitution of the United States. If the rule of the Mercoid case, supra, that a strict application of the doctrine of res judicata should yield to considerations of the public interest which might be adversely affected was soundly applied in patent litigation, where private interests are also involved; then we think that, a fortiori, the principle is more strongly applicable, indeed controlling, where, as here, the effective rights of suffrage of the members of an organized political party are at stake. A right decision as to the con-

stitutionality of the statute, subject to effective review by the Supreme Court of the United States, is of so much public importance that, in our opinion, it supersedes the rule of res judicata. The motions of the defendants for summary judgment are therefore denied.

In addition to their motions for summary judgment, the defendants answered, insisting that the statute as construed by the Mississippi Supreme Court was valid and Constitutional, and also filed various counterclaims; and the plaintiffs filed motions to strike and to dismiss addressed to the counterclaims. All of these matters were carried with the case, except that no evidence was taken upon the issues presented by the counterclaims, the Court ruling that, if that became necessary, such evidence would be taken on a separate hearing. See Rules 13(i) and 42(b), Federal Rules of Civil Procedure, 28 U.S.C.A.

There was introduced in evidence by stipulation the entire transcript of the record before the Supreme Court of Mississippi in Hoskins v. Howard, supra. There were further stipulations and some oral testimony, none of which is seriously controverted. This Court finds as facts the same facts stated in the opinion of the Supreme Court of Mississippi in Hoskins v. Howard, supra, and the facts found by the Circuit Court of Hinds County, Mississippi, as set forth in the record in said cause.

■ We proceed to a discussion and decision of the constitutionality of the statute as construed by the Supreme Court of Mississippi. The right existing in the State of Mississippi to regulate primary elections, to prescribe the form of the ballot, and otherwise reasonably to supervise the activities of political parties is in no way denied. The state legislature has full power and authority to enact all reasonable provisions for distinctive party emblems and insignia, and for other means to avoid confusion among the voters or any occasion therefor, provided the terms of the statute are reasonably adapted to the ends to be served and are not violative of constitutional rights.

The gist of the plaintiffs' claim is not that the entire Mississippi statute is unconstitutional, but only that part which has been construed by the Supreme Court of Mississippi to deny to a political party existing at the time of enactment the right to register and continue to use its name solely because another political party had already been registered using a part of the same name.

■ The construction of the State statute by the highest court of the State is binding upon this Court. Georgia Ry. & Electric Co. v. City of Decatur, 295 U.S. 165, 170, 55 S.Ct. 701, 79 L.Ed. 1365; Burns Mortgage Co. v. Fried, 292 U.S. 487, 493–494, 54 S.Ct. 813, 78 L.Ed. 1380. As said in Hartford Accident & Indemnity Company v. N. O. Nelson Mfg. Co., 291 U.S. 352, 358, 54 S.Ct. 392, 394, 78 L.Ed. 840:

"As to the meaning of the statute now challenged as invalid, the Supreme Court of Mississippi speaks with ultimate authority. * * * The only question in this court is whether the result is consistent with the Constitution of the United States."

■ It is, of course, settled that the administration and construction of a law may render it unconstitutional. Davis v. Schnell, D.C., 81 F.Supp. 872, affirmed 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093; Yick Wo v. Hopkins, 118 U.S. 356, 373, 6 S.Ct. 1064, 30 L.Ed. 220.

■ With all deference to the views of the Supreme Court of Mississippi, for which we entertain a very high respect, we find ourselves in complete agreement on the Constitutional question with the contrary views expressed by the learned State Circuit Judge, and with those so well expressed by Justice Lee in his dissenting opinion. It seems clear to us that that part of the Mississippi statute which would deny to the Republican Party of Mississippi, a political party existing at and long before the enact-

ment of the statute, the right to register and to continue to use its name, merely because another political party had already been registered using the name "Republican", is a denial of due process of law. It does not meet the constitutional requirement of "a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." Daniel Webster in the argument of the Dartmouth College Case, Trustees of Dartmouth College v. Woodward, 4 Wheat. U.S. 518, 581, 4 L.Ed. 629. See States' Rights Democratic Party v. State Board of Elections, 229 N.C. 179, 49 S.E.2d 379, 384; 42 Am. Jur., Public Administrative Law, Sec. 135; 12 Am.Jur., Constitutional Law, Sec. 573, p. 268.

The Supreme Court of Mississippi relied upon the maxim *Prior Tempore Potior Jure*—"He who is first in time is preferred in right". That maxim, we think, has a limited field of operation. It contains no magic which would permit the transgression of rights guaranteed by the Constitution of the United States. The Mississippi Court refers to two applications of the maxim, the first with reference to the recordation of land conveyances. It seems settled that for recording laws to have a retrospective operation and be constitutional they must provide a reasonable time in which to record previously executed instruments. See Turner v. People of State of New York, 168 U.S. 90, 18 S.Ct. 38, 42 L.Ed. 392; Vance v. Vance, 108 U.S. 514, 2 S.Ct. 854, 27 L.Ed. 808; 45 Am. Jur., Records and Recording Laws, Sec. 31. The other reference to an application of the Latin maxim is a recent Mississippi statute dealing with the registration of brands of cattle and livestock. Such brands are intended merely for purposes of identifying the animals and of discouraging theft, and have little relation to any concept of good will contained in the rallying cry of the name of a political party. Even so, it must, of course, be true that the title to cattle already branded would not be affected by the subsequent registration of the brand.

The statute in question bears a closer analogy, it seems to us, to a statute of limitations, which would shorten the time within which suits to enforce existing causes of action may be commenced, and which to be valid must provide in each case a reasonable time for the commencement of suit before the bar takes effect. Ochoa v. Hernandez y Morales, 230 U.S. 139, 154, 33 S.Ct. 1033, 57 L. Ed. 1427; Wheeler v. Jackson, 137 U.S. 245, 255, 11 S.Ct. 76, 34 L.Ed. 659; McGahey v. Commonwealth of Virginia, 135 U.S. 662, 705, et seq., 10 S.Ct. 972, 34 L.Ed. 304; Terry v. Anderson, 95 U.S. 628, 633, 24 L.Ed. 365; 34 Am.Jur., Limitation of Actions, Sec. 18.

The same principle has been applied to protect the right of suffrage. Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340; Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281.

The counterclaims filed by the defendants were all predicated upon the assumption that the plaintiffs would fail in their action in this Court and need not, therefore, be given separate consideration. Said counterclaims are hereby dismissed. There is no reason for the issuance of an injunction against the defendants other than the Secretary of State. See St. John v. Wisconsin Employment Relations Board, 340 U.S. 411, 414, 415, 71 S.Ct. 375, 95 L.Ed. 386. Those defendants should, however, be taxed with the costs of court. The Secretary of State is not interested in the outcome of this litigation, other than to perform his official duty, while the other defendants have been the prime movants in denying registration to the Republican Party of Mississippi. It is ordered, adjudged and decreed that a mandatory writ of injunction issue against the defendant Heber Ladner as Secretary of State for the State of Mississippi requiring him to register the Republican Party of Mississippi pursuant to the remaining valid provisions of Chapter 458 of the Mississippi Laws of 1950 and of Sections 3107–01 to 3107–09 of the Mississippi Code of 1942, as amended. The costs of court are taxed against the de-

fendants other than the Secretary of State.

The Clerk will enter the judgment as herein directed, the judgment of this Court to be effective from the date so entered.